## Sanders v. Commonwealth.

(Decided June 8, 1917.)

### Appeal from Lewis Circuit Court.

1. Criminal Law—Highways—Construction and Improvement—Fraudulent Statement of Engineer.—Under sections 1207 and 4333, Kentucky Statutes, the road engineer, who makes a false and fraudulent statement of the claim of a sub-contractor, or any other person, who makes a claim against the county, for the improvement of the roads, with the fraudulent intent to enable such sub-contractor or other person to obtain money from the county, to which he is not entitled, incurs the penalty prescribed by section 1207, supra.

2. **Criminal Law—Highways—Change in Location—Statement of Engineer.**—Although the county court is the only authority authorized by law to change the location of a public highway from its established place, and the fiscal court is not authorized to expend the public funds upon a road, other than a lawfully established public highway; where the fiscal court authorizes by a contract the construction of a road, and the road engineer, in good faith and in the honest belief that he is in the performance of his duties, does not commit a criminal offense in stating and certifying, what he, in good faith, believes is due the contractor, under the contract which the fiscal court has made.

ALLAN D. COLE, SAMUEL J. PUGH and R. D. WILSON for appellant.

M. M. LOGAN, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Ivan W. Sanders, was the county road engineer of Lewis county, and was indicted for a violation of section 1207, Kentucky Statutes, and upon a trial upon the indictment, was convicted and sentenced to a term of imprisonment in the state reformatory. The statute, for an alleged violation of which, he was indicted and convicted, is as follows:

"If any person whose duty it is to keep or make any written statement or exhibit of any account, claim or liability of the state, or any county or district of any county, or of any municipal corporation, or of any person against the state, county or district thereof, or of any municipal corporation, shall make any false or fraudulent statement or exhibit of any such account, claim or liability, or shall fraudulently omit to make a true statement or exhibit of such account or liability, or shall alter the same after being truly made, with the fraudulent intent to conceal the true condition of the same, or to acquit such persons or any other person of any such account, claim or liability, or any part thereof, or to obtain, or to enable any other person to obtain, money or other movable thing of value from the state, or from any county, or from any district of any county, or from any municipal corporation, and to which such person was not entitled, such person so offending shall be confined in the penitentiary not less than one nor more than ten years."

The crime charged, in the accusative part of the indictment, was, that, appellant had falsely and fraudulently made a statement and exhibit of an account, claim

and liability against Lewis county, with the fraudulent intent to enable another person to obtain from the county money and property of value, to which such person was not entitled. In the descriptive portion of the indictment, it was alleged substantially, that the appellant, while holding the office of road engineer of the county and performing the duties of the office, falsely and fraudulently and knowingly made, certified and recommended for payment a false, fraudulent and illegal claim, exhibit, demand and liability against Lewis county in favor of one Ed Rand for the sum of two thousand dollars, which Rand falsely and fraudulently claimed was due him from the county for twenty thousand feet of lumber, board measure, at the price of ten cents per foot, and which Rand falsely and fraudulently claimed, that, he had furnished and used upon the public roads of the county, when Rand, in fact, had not furnished nor used the lumber for the county, as above stated, and that appellant knew that the claim was false and fraudulent and that Rand was not entitled to receive payment of the claim from the county, but made out and certified the correctness of the claim for the fraudulent purpose of enabling Rand to obtain money from the county when he was not entitled to it; that the claim was presented and exhibited to the county judge and the fiscal court and demand made for its payment, and that by reason of the false and fraudulent claim for the money so made and exhibited by the appellant, that Rand was enabled to and did collect the amount of the claim from the county.

The appellant interposed a general demurrer to the indictment and insists that the court erred in overruling the demurrer. The argument advanced to uphold this contention is, that the road engineer has the duty, only, of certifying the claim of one to whom the county is indebted or who has some contractual relations with the county, and is under no duty of certifying or stating the claim of one to whom the county is not indebted by contract, and, therefore, if he should falsely and fraudulently state the account and certify to the correctness of the claim of one, to whom the county was not indebted, in any amount, or with whom, it has not a contractual relation, that he does not thereby commit a public offense under section 1207, *supra*, although the result of his false statement is the perpetration of a fraud upon the county and the loss to it of a sum of money by reason of such fraud, and that as the indictment did not show.

that the county was indebted to Rand in any sum and failed to show a contractual relation with him by the county, that it was insufficient and did not accuse appellant of any public offense denounced by the statute. The argument being substantially, that unless the claimant is a creditor of the county, at least in some amount, or has at least a contract with the county upon which a claim might be predicated, the road engineer does not violate the statute by rendering or certifying to be correct a false and fradulent claim in behalf of such a party. The argument is further advanced, that Rand being a sub-contractor under one Jones, the county did not owe him anything and maintained no contractual relations with him, and hence appellant was under no duty to certify his claim as correct, and did not violate the statute by so doing, although the statement and exhibit made of his account by appellant was false and fraudulent. It will be observed, however, that the indictment does not show that Rand was a sub-contractor under any one, even if such relation to the county by Rand was sufficient to absolve the appellant from the penalty for making a false and fraudulent claim against the county in his behalf. Besides, the view urged seems to place a construction upon the statute, which is too narrow, when the plain purpose in enacting the statute seems apparent from its terms. The plain purpose of the statute is to place a penalty upon any one whose duty it is to keep or make an account, claim or liability in behalf of the county against any one, and who shall make a false and fraudulent statement or exhibit of such account, or shall fraudulently omit to make a true statement or exhibit of such account, or shall alter the same after it has been truly made, with the fraudulent intent to conceal its true condition or to acquit such person or any other person of any such account, claim or liability or any part of it; or whose duty it is to keep or make any written statement of the claim of any person against the county, and who shall make a false and fraudulent statement or exhibit of such account or shall fraudulently omit to make a true statement or exhibit of such account or liability, with the fraudulent intent to conceal its true condition, or to obtain or to enable any other person to obtain money or movable thing of value from the county, to which such person is not entitled. This would seem to include the state of case where one, whose duty it was to keep or make a written statement of the claims of

persons against the county growing out of any particular conditions, for which a county might be indebted. and whose certification would be thus relied upon in making payments, and who should make a false and fraudulent statement of a claim of any one arising from pretended relations with the county, to enable such person to fraudulently obtain money from the county and to which such person was not entitled.

Section 4333, Kentucky Statutes, is as follows:

"All claims of any contractor or contractors or others which may, under the provisions of this chapter, be due to such contractor, contractors or other persons, shall, when certified to by the county road engineer, be presented to the county court, and if it be found correct, shall, upon the order or warrant of said court, signed by the judge thereof, be paid by the treasurer or sheriff: Provided, further, that it shall be the duty of the county road engineer to furnish the fiscal court, at its October session each year, with a certified statement showing an itemized account together with the vouchers for all expenditures made during the year. Provided, that no county road engineer shall certify the claims of any such contractor or contractors until, upon examination, he shall find that the provisions of the contract have been strictly complied with."

It will be observed that this statute makes it the duty of the road engineer to certify to the correctness of all claims against the county for the construction or improvement of the public highways of the county, whether they be those of contractors or other persons, who make claims against the county for such services, and upon the certification of the road engineer, the county court, if the claim is found to be correct, shall order its payment, and without the certification of the engineer the payment cannot be properly made. It will be further observed, that the indictment, in the instant case, is for a violation of those terms of section 1207, *supra*, which fixes a penalty upon the one, whose duty it is to keep or make an account of any person against the county and who makes a false or fraudulent statement or exhibit of such account, with the fraudulent intent to enable such person to obtain money from the county, to which such person was not entitled. The crime denounced by the statute is a statutory one, and the indictment charged it substantially in the language of the statute, and the demurrer was properly overruled.

(2.) It is, also, contended by appellant that he was entitled, under the evidence, to have had a directed verdict of acquittal in his favor. The consideration of this contention will make necessary an examination of the facts, as shown by the evidence. The evidence proves that appellant and Rand were cousins in the first degree, and appellant sent for Rand to come to him from West Virginia, where Rand then was, to assist him in his office, and thereafter Rand lived with appellant at his dwelling house, and for a time at least assisted him in the duties of his office, being paid therefor by the county and state, but had ceased to be paid from that source before the matters occurred out of which the indictment arose, on account of a suggestion by the county judge, that Rand's employment was probably unlawful, because of the relation of kinship between Rand and appellant. It was determined by the fiscal court to improve the highway known as the Concord Hill Road, with the aid and assistance of the state, and a representative of the commissioner of roads made a survey of the road to be improved, and plans and specifications for its improvement. The contract for the improvement of the road was then advertised to be let to the best and lowest bidder. The proposition of one of the bidders was accepted by the fiscal court, but the commissioner of roads refused to approve the bid or to enter into a contract upon the terms of the bid. It was advertised a second time and the bid of one Jones was accepted by the fiscal court, but the commissioner of roads withheld his approval, and on October 25, the fiscal court determined by resolution to accept the bid offered by Jones and to improve the road without the aid of the state and without reference to the commissioner of roads. These resolutions, as it turned out, were prepared by Rand. When the fiscal court determined to improve the road without the aid of the state, the contract for the improvement of the road was offered again to bidders, when Jones became the only bidder. Rand assisted Jones in preparing his bid, and seems to have written into the proposal the "bid unit" prices for the building of the bridges and culverts upon the route without reference to Jones' opinion, or rather Jones made the prices in deference to Rand's judgment, as Jones claimed to have no knowledge of the building of bridges and culverts and Rand was well advised upon such subjects, and, at the time of the preparation of the bid, Rand proposed to Jones to take the part of the contract, which

related to the bridges and culverts, off of the hands of
Jones, if Jones should desire him to do so.  The survey,
plans and specifications for the improvement of the road
were for its improvement along and upon the public high-
way, as it was then located and in use, and the form of
the proposal offered to the bidders and the form of the
proposals made by the bidders were such as had been pre-
pared in contemplation of the road being improved with
the aid of the state, but when the fiscal court determined
to improve the road without the aid of the state and with-
out the concurrence of the commissioner of roads, it
seems, that an agitation arose, by persons living along
the route, to make a change in the location of a portion
of the line of road upon which the improvement was con-
templated, in order, as it was said, to put the road upon
more elevated ground and above the ordinary rises of the
water in the Ohio river.  Hence, when Jones presented his
proposal to the fiscal court on the 29th day of October,
he added to and included in the proposal, which he had
formerly made the following:  ''The contractor further
proposes to make changes suggested by the county road
engineer in order to improve the road, and to keep cer-
tain low lying sections above the ordinary rises of the
river, for the total cost, bridges, etc., to be considered.''
This proposal on the part of Jones for the improvement
of the road was duly accepted by an order of the fiscal
court on the 29th day of October.  The proposition for
the improvement of the road submitted by the fiscal court
to the bidders and the proposal of Jones, thus, became
the contract between the county and Jones for the im-
provement or reconstruction of the road. The specifica-
tions prepared for the improvement of the road by the
representative of the commissioner of roads became a
part of the contract by its terms.  According to these
plans and specifications the road was to be reconstructed
along the same route it then pursued.  Upon this route,
the specifications provided for the erection of a concrete
bridge, to be reinforced with steel, and to have a span
of probably twenty feet, and, also, the erection of a small
bridge, at another point on the route.  The proposal of
Jones was to do all the necessary work of excavating for
the sum of $11,063.95, but the building of the bridges
was to be paid for under the contract in accordance with
the quantity of materials necessary to be used in their
erection, that is, so much per cubic yard for masonry,
and so much per pound for steel, and among other items

for which the contractor was to be paid according to the quantity used was "lumber in place," for which he was to receive ten cents per square foot, board measure. No estimate was contained in the contract of the total sum, which Jones was to receive for building the bridges. The changes suggested by appellant, as engineer, in order to improve the road and keep certain low lying sections above ordinary rises of the river, was a change of a portion of the route of the road to be improved from the survey made and the plans and specifications, which had already been made, to another location upon higher ground, from three hundred to four hundred yards from the then location of the road. To do this rendered unnecessary and dispensed with the building of the large bridge provided for in the specifications, but made necessary the building of two small bridges upon the route to which the road was changed. The change, also, made it necessary for the contractor to do largely more grading and excavating, but the cost of the two small bridges, according to the "bid unit" prices, would be much less than the cost of the large bridge provided for on the original route, and would take much less concrete, stone work and steel, and much less lumber for forms to be used in putting the concrete into shape. The county court did not make any order permitting a change of the road nor establish the road over the route to which the engineer changed it. On the day upon which the contract was entered into with Jones for the improvement of the road, the appellant, as road engineer, gave to Jones a writing, which directed the length of the spans of the two small bridges to be built on the route to which the road was changed, and directing him that they should be built according to the plans furnished by the commissioner of roads, for the building of such bridges. On the 20th day of November, Jones and Rand entered into a contract, by the terms of which, it was agreed that Rand was to build the bridges, which Jones had agreed to build under his contract, and that the county should pay Rand therefor instead of Jones; that Rand should build them accordingly, as Jones was obligated to do, and Rand assumed all liability of Jones in regard to the bridges. The county judge was made acquainted with this contract and at his suggestion the writing embracing the contract was filed by Rand in the office of the county court clerk. At the time the contract was entered into between Jones and the fiscal court for the improvement of the road, Jones

executed bond in the sum required of him for the faithful performance of his contract.

The appellant requested a representative of the commissioner of roads, who was then in the county, to make a survey and prepare an estimate of the total sum, which the building of the large bridge on the original route would have cost and received such estimate in a letter, which showed, according to such estimate, that 19,926 feet of lumber would be necessary to make forms for the concrete work in the building of such bridge.

The contract with Jones provided, that the county would make payments upon monthly estimates of sums due, as the work progressed, and on December 31, Rand called upon appellant to make a statement of his account, showing the sum then due him upon his contract for the erection of the bridges. It is not clear from the evidence whether at that time the two small bridges had been completed or all forms had then been made, which were necessary in their construction. The appellant made a statement embracing the various items of work done and cost of the two small bridges, and giving the total sum which Rand was then entitled to receive from the county, and among these items was one for two thousand dollars, for twenty thousand feet of lumber, board measure, at ten cents per foot. This he subscribed in his official capacity as road engineer. This statement was presented to the judge of the county court, who thereupon caused an order of the county court to be made directing the payment of the account by the treasurer, which was done by the payment to Rand of eighteen hundred dollars for the lumber, ten per cent. of the sum stated, being retained, until the entire completion of the job. On January 31, the appellant made another written statement and exhibit of the account of Rand against the county for what was stated in the account to be due him for building the bridges, and this statement showed that Rand had used twenty-two thousand five hundred and thirty-eight feet of lumber for the forms, but this included the other small bridge, which was built under the Jones contract on a portion of the route of the road which had not been changed. Whether the balance shown by this statement of the account to be due to Rand has been paid does not appear from the evidence. The proof, however, shows, that in erecting all three of the bridges, the one on the original route and the two small bridges on the route to which the road was changed, Rand used less than six

thousand feet of lumber, board measure, instead of twenty-two thousand five hundred and thirty-eight feet, as certified by the appellant in the second statement, or twenty thousand feet, according to the certificate of the monthly estimate due Rand on the 31st day of December.

To constitute guilt on the part of appellant of the crime charged in the indictment, it must be shown that: (1) the appellant was road engineer of Lewis county, and as such it was his duty to make a written statement of the liability of the county to Rand for the sum due him under the contract, which the county had made with Jones and by Jones sublet or in part assigned to Rand; (2) the statement made by appellant was false; (3) the false statement was made by appellant with the fraudulent intent to enable Rand to obtain money or other movable thing of value from the county, to which he was not entitled.

As the case will have to be tried again, no particular discussion of the testimony or its effect will be made, but suffice it to say, that as to the first above mentioned essential the question has heretofore been disposed of. The second and third essentials, to conviction, really depend upon the third, for if Rand was entitled to receive all that appellant certified was due him, the statement could not be false nor fraudulent, and although appellant was actuated by a fraudulent intent, yet, if the amount which he certified was due to Rand and Rand was entitled to receive it, he could not be guilty under the statute. Hence, if Rand was not entitled to receive the amount stated by appellant and certified by him, as being due Rand, this fact would be evidence, which would tend to prove that the certification was fraudulently done by appellant. If there was no evidence tending to prove that the amount certified as being due to Rand was not due him, a verdict should have been directed in favor of the appellant. The contract between Jones and the fiscal court, when considered in the light of the circumstances, is susceptible of but one reasonable construction, as applying to the question under consideration, and that is, that a lump sum was to be paid to Jones by the county for the excavating necessary, and that he should be paid so much a quantity for the lumber necessarily provided by and used by him in the construction of the bridges upon the original route, and that he should construct the road with the changes

suggested by the engineer for the same total sum, which
he would have received under the contract for building
the road without the changes, although the excavation
work was much more considerable with the changes sug-
gested than on the original route, he received only the
same sum for doing it as he would have received for
this work on the original route, and hence, if he was to
receive the same total sum for construcing the road with
the changes, as he would have received for constructing
the road without the changes, he would necessarily have
to receive for constructing the two small bridges on the
new route the same total sum as he would have received
for constructing the large bridge on the original route.
This contract may have been an improvident one, but if
so, the fiscal court and not the engineer made it. It
does not appear from the evidence that appellant had
anything to do with making the contract or of suggest-
ing Jones' bid, and there is no claim upon the part of
any one, so far as the record demonstrates, that the con-
tract was fraudulently obtained. The contract might in
good faith be construed by one undertaking to act under
it or carry it out, to authorize the road to be constructed
in accordance with the changes suggested by the engi-
neer, and, in fact, it is impossible to consider all the
terms of the contract without arriving at the conclusion,
that the contract was entered into and made by the fiscal
court in contemplation that changes would be made in
the original route of the road, so as to avoid the expos-
ure of the road to the ordinary rises of the water in the
Ohio river. While, as a matter of civil liability, the
county court is the only authority for changing a public
highway from an established location to another, and
while the fiscal court is not authorized to expend the
public funds upon any road, other than the established
highway, where the fiscal court authorized by a contract
the construction of a road, the road engineer, who, in
good faith and in the honest belief that he is in the per-
formance of his duties, would not be guilty of a criminal
offense, in stating and certifying, in good faith, what he
believed was due the contractor under the contract, which
had been entered into by the fiscal court. With the ques-
tions of the civil liability of the county for the construc-
tion of roads, where same have not been established by
the county court, or by the expenditure of funds of the
county upon a route, other than the one established by

the county court as a public highway, in this prosecution for a criminal offense, are not necessary to be considered and are not here determined. Bearing the above declaration in mind, it may be said that Jones had a right to sublet any portion of his contract, and the contract between him and Rand amounted to an assignment of that portion of Jones' contract, which relates to the building of bridges, to Rand, and Rand had a right to receive for the performance of that portion of the contract the same sum which Jones would have received therefor, if he had completed the contract himself. The evidence in the record, however, does not show that Rand was entitled to receive from the county, under the contract, all that the appellant submitted and certified was due him, and there is some evidence from which it can be inferred that Rand was not entitled to the amount for the lumber furnished, which the statement said that he was entitled to receive, and hence, the motion for a directed verdict was properly overruled, and upon another trial should be again overruled, if made, if the evidence is the same, as upon the trial from the judgment, in which the appeal is taken.

(3.) The instructions to the jury are complained of by appellant, and justly so. The Commonwealth did not and was not required by a motion of appellant to elect upon the making of which statement and certificate, the one of December 30th, or the one of January 31st, it would rely for conviction. If each of the statements was false and fraudulent, the crime denounced by the statute was committed when appellant made each of them, but the evidence having been first introduced for the purpose of conviction, with reference to the one of December 30th, the court properly made the election for the Commonwealth, and in the instructions to the jury confined the guilt or innocence of appellant to the making of that statement. McCreary v. Commonwealth, 163 Ky. 206, and cases therein cited. The court, however, erred in giving instruction number one. The instruction is involved and too lengthy not to have been misconceived by a jury, and is of too great length to be copied herein. The chief vice of the instruction, however, relates to the construction placed upon the contract, and the fact, that by it, the court advised the jury, that Rand in building the bridges was only entitled to receive payment for the work actually done and the materials actually furnished

in their construction at the "bid unit" prices provided in the contract with Jones for the lumber to be used in the construction of the bridges upon the route without any suggested changes, and ignored that portion of the contract with Jones, which provided that in building the road in accordance with the changes suggested by the engineer, that he was to receive the same total sum for it, as he would have received for the construction of the road upon the original route and without changes, and directing the jury, that if appellant certified that Rand was entitled to receive payment for a greater number of feet of lumber than he had actually used, and did this knowingly and with the intent that Rand might be enabled to receive payment for the amount certified, he was guilty of giving a false and fraudulent statement with the fraudulent intention, etc., and to find him guilty. A reference to section 4333, *supra*, shows that the claims which the road engineer has the duty of certifying are such as are *due* the contractor or other person, and when the engineer "upon examination shall find that the provisions of the contract have been strictly complied with." Doubtless, under many contracts it would be the duty of the engineer to state and certify the materials actually used and the work actually done, and, for the construction of the bridge, which was erected by Rand upon the original route, in the instant case, it was the duty of appellant to state and certify the quantity of lumber actually used up to the time of the giving of the statement complained of, because the contract limited the contractor as to that item to the "bid unit" prices, provided for the construction of the bridges upon the original route, but as to the lumber used in the construction of the two small bridges upon the route to which the road was changed, the rule requiring the engineer to state and certify the amount actually used is not the criterion by which to determine the amount due, because of the erection of these bridges under the terms of the contract between the fiscal court and Jones. Under the terms of that contract, the contractor was entitled to charge, not for the lumber actually used, but the quantity, which the erection of the large bridge on the original route would have required, as under the terms of the contract, that was the sum due him upon the item of lumber. The court should have by a proper instruction so advised the jury, as to the amount due Rand

under the contract for the erection of the bridges, as the contract is herein construed, and that appellant was entitled to state and certify that there was due Rand, under the contract, the lumber actually used in the bridge built by him on the original route, and for the two small bridges on the route as changed, the lumber which would have been necessary in constructing the large bridge on the original route. The appellant was not guilty of the offense charged in the indictment, unless he falsely and fraudulently stated and certified that the amount due Rand, at the time the statement and certification was made, with relation to the item of lumber, was in excess of the quantity actually used in the construction of the bridge built by Rand upon the original route, or with relation to the two small bridges built upon the route changed, that the lumber, used in their construction, was in excess of what would have been necessary to have been used in the building of the large bridge on the original route, and that appellant made the false and fraudulent statement and certification for the fraudulent purpose and intention of enabling Rand to obtain money from the county, to which he was not entitled. To make a statement and certification of what was due Rand under such a contract as existed between the fiscal court and Jones necessarily involved an estimate of the quantity of lumber necessary for the construction of the large bridge on the original route which was never built, and would compel a reliance by the engineer upon his own opinion or that of others qualified to give such opinions, neither of which might be correct, as to the estimates, and, as to the amount of the lumber actually used in building the small bridge on the original route, and would have to be a dependence to some extent upon the statement of others. To require a fraudulent intent to exist before one can be convicted of a crime, implies, that if such individual acted in good faith and in the honest belief that facts existed, which justified his action, he is not guilty of a fraudulent intent and, in the instant case, if the appellant after a reasonably diligent inquiry to ascertain the true facts, stated and certified the quantity of lumber at the "bid unit" prices, which he in good faith believed, at the time, had been actually used in building the small bridge on the original route, and in estimating the sum due Rand for constructing the two small bridges on the changed route, certified no more

lumber than he in good faith believed would have been required to construct the large bridge on the original route, which was not built, he would be guiltless under the criminal laws of having committed a fraud in stating and certifying the amounts.

Instructions Nos. 3 and 4 should not have been given, at all, as they merely submit questions of law to the jury. The principles of law therein declared, while as abstract declarations of the law, may be correct, in most part, they have no place in a criminal proceeding, where a specific intent to defraud is necessary to be shown before guilt is incurred, and without which the offense denounced by the statute is not committed. These principles of law could be invoked, only, in determining the contract rights of parties in civil actions, which might grow out of controversies arising from similar states of fact, as were the basis of the controversy in this action.

The requirement of the statute, section 4333, *supra,* which makes it unlawful for the road engineer to state and certify as correct the claim of a contractor until "upon examination" he "finds that the provisions of the contract have been strictly complied with," certainly imposes upon him the duty of determining when a contract has been complied with, and if he should honestly, but erroneously misconstrue or put a construction upon it, with which some other person would not agree, he would not be criminally liable, and hence the appellant was entitled to state what his construction of the contract was, in relation to the amount due the contractor for lumber in building the bridges. He should, also, be allowed to state the changes suggested by him in the road and to which the contract refers. The estimate made by the representative of the commissioner of roads, as to the cost of the large bridge on the original route, when properly authenticated, should, also, be admitted as evidence of the good faith of appellant in making the estimate.

For the reasons stated, the judgment is reversed and cause remanded for proceedings consistent with this opinion.